JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

TERELL STAFFORD
7 Creamery Road
Hamilton, NJ 08620

**(b)** County of Residence of First Listed Plaintiff    Mercer
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
JONATHAN ZAKHEIM, ESQUIRE, Astor Weiss Kaplan & Mandel, LLP, 200 S. Broad Street, Suite 600, Philadelphia, PA 19102 (215) 893-4951

## DEFENDANTS

ENCORE SERIES INC. d/b/a THE PHILLY POPS
1518 Walnut Street, Philadelphia, PA 19102

County of Residence of First Listed Defendant    Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
William A. DeStefano, Esquire, Saxton & Stump, 123 South Broad Street, 28th Floor, Philadelphia, PA 19102 (215) 925-2500

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | |
| ☐ 2 | U.S. Government Defendant | |
| ☒ 3 | Federal Question *(U.S. Government Not a Party)* | |
| ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                            *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 USC § 1964(c); 28 USC § 1337
Brief description of cause:
Defendants' conspiracy to take over music market cost Plaintiff his job.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**    $3,697,355.55

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☒ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE    Mia Roberts Perez

DOCKET NUMBER    2:23-cv-01421

DATE    May 22, 2024

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

05/2023

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 7 Creamery Road, Hamilton, NJ 08620

Address of Defendant: 1518 Walnut Street, Philadelphia, PA 19102

Place of Accident, Incident or Transaction: Philadelphia, PA

**RELATED CASE IF ANY:**
Case Number: 2:23-cv-01421    Judge: Mia Roberts Perez    Date Terminated

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐  No ☒
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit Pending or within one year previously terminated action in this court?   Yes ☒  No ☐
3. Does this case involve the validity or infringement of a patent already in suit or any earlier Numbered case pending or within one year previously terminated action of this court?   Yes ☐  No ☒
4. Is this case a second or successive habeas corpus, social security appeal, or pro se case filed by the same individual?   Yes ☐  No ☒

I certify that, to my knowledge, the within case ☒ is /☐ is not related to any now pending or within one year previously terminated action in this court except as note above.

DATE: May 22, 2024    _Attorney-at-Law (Must sign above)_    323954    _Attorney I.D. # (if applicable)_

**Civil** (Place a √ in one category only)

*A. Federal Question Cases:*
1. Indemnity Contract, Marine Contract, and All Other Contracts)
2. FELA
3. Jones Act-Personal Injury
4. Antitrust
5. Wage and Hour Class Action/Collective Action
6. Patent
7. Copyright/Trademark
8. Employment
9. Labor-Management Relations
10. Civil Rights
11. Habeas Corpus
12. Securities Cases
13. Social Security Review Cases
14. Qui Tam Cases
☒ 15. All Other Federal Question Cases. *(Please specify):* Racketeer Influenced and Corrupt Organizations

*B. Diversity Jurisdiction Cases:*
1. Insurance Contract and Other Contracts
2. Airplane Personal Injury
3. Assault, Defamation
4. Marine Personal Injury
5. Motor Vehicle Personal Injury
6. Other Personal Injury *(Please specify):*
7. Products Liability
8. All Other Diversity Cases: *(Please specify)*

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration)*

I, Jonathan Zakheim, Esquire , counsel of record *or* pro se plaintiff, do hereby certify:

☒ Pursuant to Local Civil Rule 53.2 § 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: May 22, 2024    _Attorney-at-Law (Sign here if applicable)_    323954    _Attorney ID # (if applicable)_

NOTE: A trial de novo will be a jury only if there has been compliance with F.R.C.P. 38.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| TERELL STAFFORD | : | CIVIL ACTION |
| v. | : | |
| ENCORE SERIES INC. d/b/a THE PHILLY POPS, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.   ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.   ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.   ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)   ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X )

| | | |
|---|---|---|
| May 22, 2024 | _[signature]_ | JONATHAN ZAKHEIM, ESQUIRE |
| **Date** | **Attorney-at-law** | **Attorney for** Plaintiff |
| 215-893-4951 | 215-790-0509 | jzakheim@astorweiss.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

American LegalNet, Inc.
www.FormsWorkFlow.com


## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERELL STAFFORD, | CIVIL ACTION |
| *Plaintiff,* | |
| v. | Case No. _____ |
| ENCORE SERIES INC. d/b/a THE PHILLY POPS, THE PHILADELPHIA ORCHESTRA ASSOCIATION, THE PHILADELPHIA ORCHESTRA AND KIMMEL CENTER, INC., TICKET PHILADELPHIA, FRANK GIORDANO, and MATIAS TARNOPOLSKY, | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

## **COMPLAINT**

Plaintiff Terell Stafford, by and through his undersigned counsel, hereby avers the following by way of Complaint against Defendants Frank Giordano, Matias Tarnopolsky, Encore Series Inc. d/b/a The Philly POPS, The Philadelphia Orchestra Association, The Philadelphia Orchestra and Kimmel Center, Inc., and Ticket Philadelphia:

### **Introduction**

1.      This action seeks to recover for breaches of contract, tortious interference, and other losses arising out of the wrongful termination of Plaintiff's position as the Philly POPS' Artistic Director for Jazz, together with all damages flowing from Defendants' violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Sherman Antitrust Act ("Sherman Act") in connection with a conspiracy to monopolize the market for live orchestral music and "own[] jazz in Philly."[1]

---

[1] David Murrell, *Who Killed the Philly POPS?*, Philadelphia Magazine, March 23, 2024, available at: https://www.phillymag.com/news/2024/03/23/philly-pops/ (last accessed May 9, 2024); *see also* Ex. 9 at p. 8.

**The Parties**

2.      Plaintiff Terell Stafford ("Stafford" or "Plaintiff") is an adult individual residing at 7 Creamery Road, Hamilton New Jersey 08620.  Stafford is a renowned musician, educator, and band leader who was the Philly POPS' Artistic Director for Jazz from 2019 until his abrupt constructive termination in early 2023 due to the unlawful conduct described below.

3.      Defendant Encore Series Inc. d/b/a The Philly POPS (the "POPS") is a nonprofit corporation organized under the laws of the Commonwealth of Pennsylvania with offices at 1518 Walnut Street, Philadelphia, Pennsylvania 19102.

4.      Upon information and belief, the POPS' primary business activity involves the production and management of live orchestral music performances.  From 2001 until 2023, the POPS produced an annual concert series performed in Verizon Hall at the Kimmel Center for the Performing Arts in Philadelphia, Pennsylvania.

5.      At all relevant times, employees of the POPS acted as agents and servants for the POPS, and within the scope of their authority and in the course of employment under the direct control of the POPS.  Additionally, at all relevant times, the POPS acted by and through their authorized agents, servants, workmen and/or employees acting within the course and scope of their employment with the POPS and in furtherance of the POPS' business.

6.      Defendant Frank Giordano is an adult individual residing at 7 Beach Drive, Medford Lakes, New Jersey 08055.  Defendant Giordano was the President and Chief Executive Officer of the POPS from 2011 until 2023, and continues to serve on the Board of Directors.

7.      At all times relevant hereto, Defendant Giordano had an active role in corporate decision-making, and was instrumental in decisions concerning, among other things, the cessation

of the POPS' business operations, and the failure of the POPS to pay wages to Stafford that are due and owing.

8.      Defendants Giordano and the POPS are referred to collectively herein as the "POPS Defendants".

9.      Defendant The Philadelphia Orchestra Association ("POA") is a nonprofit corporation organized under the laws of the Commonwealth of Pennsylvania with offices at 300 South Broad Street, Philadelphia, Pennsylvania 19102.

10.     Like the POPS, the primary business activity of Defendant POA is the production and management of live musical performances, including a concert series performed every year since 2001 at Verizon Hall in Philadelphia featuring classical, jazz, and popular music.

11.     Defendant The Philadelphia Orchestra and Kimmel Center, Inc. ("POKC") is a nonprofit corporation organized under the laws of the Commonwealth of Pennsylvania with offices at One South Broad Street, 14th Floor, Philadelphia, Pennsylvania 19107.

12.     Upon information and belief, POKC is a joint venture formed in 2021 to acquire, combine, and manage the assets of Defendant POA and third-party Kimmel Center, Inc. ("KCI"), which include Verizon Hall and other venues in Philadelphia, as well as other business activities.

13.     Defendant Ticket Philadelphia ("Ticket Philadelphia") is a general partnership organized under the laws of the Commonwealth of Pennsylvania with offices at 1420 Loust Street, Philadelphia, Pennsylvania 19102.  Upon information and belief, the general partners of Ticket Philadelphia are Defendants POA and POKC, along with third-party KCI, and the primary purpose of the partnership is to sell tickets to events at Verizon Hall and other venues owned by Defendant POKC.

14.     Defendant Matias Tarnopolsky is an adult individual residing at 1155 Youngsford Road, Gladwyne, Pennsylvania 19035.   Upon information and belief, Defendant Tarnopolsky has served as the President and Chief Executive Officer of the POA since 2018 and of POKC since that organization's founding in 2021.

15.     Defendants Tarnopolsky, POA, POKC, and Ticket Philadelphia are referred to collectively herein as the "Kimmel Defendants."

16.     Additionally, the POPS Defendants and the Kimmel Defendants are referred to collectively herein as the "Defendants."

## Jurisdiction and Venue

17.     This Court has subject matter jurisdiction over Plaintiff's RICO claims pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c), and over his Sherman Act claims pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1337.  This Court has Supplemental Jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

18.     Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction here and regularly conduct business in the Eastern District of Pennsylvania and specifically in the City of Philadelphia, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## Factual Allegations

### Plaintiff's Background and Employment with the POPS

19.     Plaintiff Terell Stafford is a Grammy-award winning trumpet player, as well as the Chair of Instrumental Studies and Director of Jazz Studies at Temple University.

20.     In addition to his work as a teacher and musician, Stafford is prolific bandleader who has directed the Jazz Orchestra of Philadelphia since 2013, among many other groups.

21.     In 2015, Stafford began working with the POPS when he was named to lead a high-school honor band known as the All-City Jazz Orchestra, which is managed by the POPS in partnership with the School District of Philadelphia.

22.     Several years later, on or around January 5, 2018, Stafford and the POPS executed an "Artist Agreement" calling for Stafford to perform with the POPS in a three-concert series entitled "*JAZZED!*" the following year.  A true and correct copy of the January 5, 2018 Artist Agreement is attached hereto as Exhibit ("Ex.") "1".

23.     Subsequently, on or around November 25, 2018, the parties signed a "Music Director Agreement" engaging Stafford to "perform the services of music director for The Philly POPS" in connection with the re-billed series now called, "*JAZZED! THE PHILLY POPS BIG BAND WITH TERELL STAFFORD*."  A true and correct copy of the November 25, 2018 Music Director Agreement is attached hereto as Ex. "2".

24.     As anticipated, *JAZZED! ... WITH TERELL STAFFORD* was an "immense success,"[2] and shortly after the run concluded, on March 20, 2019, the parties executed an agreement naming Stafford as "Philly POPS Artistic Director for Jazz, exclusive for The Philly POPS Jazz Orchestra" for the 2019-20 and 2020-21 concert seasons, and incorporating the Jazz Orchestra of Philadelphia into the POPS' organization.  A true and correct copy of the March 20, 2019 Employment Agreement is attached hereto as Ex. "3".

25.     At the time, Defendant Giordano welcomed Stafford with the following remarks:

---

[2] A.A. Cristi, *The Philly POPS Appoints Philly Jazz Legend Terell Stafford As Artistic Director For Jazz*, Broadway World, Mar. 19, 2019, available at: https://www.broadwayworld.com/philadelphia/article/The-Philly-POPS-Appoints-Philly-Jazz-Legend-Terell-Stafford-As-Artistic-Director-For-Jazz-20190325 (last accessed May 8, 2024).

> Jazz has always been a personal favorite of mine, so I'm thrilled to announce this collaboration with Philly's own Terell Stafford. I am looking forward to presenting The Philly POPS Jazz Orchestra of Philadelphia's performances over these next years. We admire his work in education, both at Temple University and with the All-City Jazz program, and we look to his leadership as we ramp up our POPS in Schools programming with the School District of Philadelphia. Terell is the perfect educator to shape the jazz musicians of tomorrow.[3]

26.    Stafford's appointment had an immediate and positive impact on the POPS, according to an article published a few months later, by "expanding" the group's educational programs as well as its "exploration of jazz" in concerts.[4]

27.    Stafford's initial term as Artistic Director for Jazz was so successful that, on or around June 21, 2021, he and the POPS signed a second contract extending his service through the 2021-22 season (the "2021 Employment Agreement"), followed by a third agreement on July 20, 2022 covering the 2022-23 season (the "2022 Employment Agreement"). True and correct copies of the 2021 Employment Agreement and the 2022 Employment Agreement are attached hereto as Ex. "4" and Ex. "5", respectively.

28.    Moreover, shortly before the execution of the 2022 Employment Agreement, Stafford was informed by Karen Corbin, the Chief Operating Officer of the POPS, that the POPS would continue to extend Stafford's contracts indefinitely, because the POPS desired and expected Stafford to remain in his role as Artistic Director for Jazz for as long as he wished to do so.

29.    Pursuant to the 2021 and 2022 Employment Agreements, Stafford was entitled to receive not less than $110,000 per year for his work as the POPS' Artistic Director for Jazz, inclusive of: a $55,000 director's fee; a "guaranteed flat fee of $5,000" for directing up to four (4)

---

[3] Id.
[4] Shaun Brady, *Meet the Philly Pops' Newly Appointed Jazz Man*, The Philadelphia Inquirer, July 25, 2019, available at: https://www.inquirer.com/arts/philly-pops-temple-university-jazz-terell-stafford-jazz-orchestra-of-philadelphia-20190725.html (last accessed May 8, 2024).

concerts "plus 10% of net box office receipts after expenses, capped at $30,000 total per show"; a $25,000 fee "[f]or the supervision of the All-City Jazz Educational Program and continued work as Director of the All-City Jazz Orchestra…payable bi-weekly in equal amounts to the end of each fiscal year"; and a $10,000 fee for helping to scout new POPS musicians.  *See* Ex. 4 and Ex. 5.

30.     The 2021 and 2022 Employment Agreements also contemplated that Stafford would "participate in the writing and development" of charitable grants, and that such grants would "augment [Stafford's] scope of work with performance opportunities funded through these grants." *See* Id.

31.     Stafford fulfilled all his duties and obligations under the 2021 and 2022 Employment Agreements, by, among other things, rehearsing and directing dozens of POPS concerts at the Kimmel Center and other venues in and around Philadelphia, supervising the All-City Jazz Educational Program and directing the All-City Jazz Orchestra, and devoting substantial time to scouting and recruiting new musicians on behalf of the POPS.

32.     Additionally, Stafford participated in the application process for numerous grants, including a successful application submitted in 2022 to the Pew Center for Arts & Heritage for $318,000 to support an April 2023 performance entitled "*The Jazz Orchestra of Philadelphia's Tribute to Shirley Scott*," for which Stafford was to receive an additional fee of $30,000 for his work as music director, curator, conductor, and guest artist on trumpet (the "Pew Grant").

33.     According to a September 19, 2022 press release, the Pew Grant was the "First" Pew Program Grant ever received by the POPS.[5]

---

[5] *The Philly POPS Awarded First Pew Program Grant*, Nov. 29, 2022 Archive of www.phillypops.org, available at: https://web.archive.org/web/20221129170723/https://phillypops.org/media/news/the-philly-pops-awarded-first-pew-program-grant (last accessed May 21, 2024).

***Despite the POPS' Years of Success and Plans for Future Growth, Defendant Giordano Abruptly Announces a Shutdown in November 2022***

34.     Publicly available information and the group's own press releases indicate that the POPS grew and thrived throughout Stafford's tenure, up to and after the Covid-19 pandemic.

35.     For example, long after the end of any Covid-19 restrictions, on August 18, 2021, Defendant Giordano announced the POPS was undergoing a reorganization due to its "sustained growth and diversification of programming," which required the appointment of four new Vice Presidents.[6]

36.     Around the same time, the POPS announced that several supporters would be honored at its upcoming annual POPS Ball for having helped the organization to achieve "its unprecedented audience growth and programmatic expansion."[7]

37.     Indeed, as late as October 2022, the POPS reportedly was negotiating to partner in the restoration of the historic Uptown Theater on North Broad Street, with plans to use the space in part for jazz concerts due to the growing popularity of, and audience for, Stafford's performances.[8]

38.     Given all the above, Stafford – like nearly everyone else affiliated with the POPS – was shocked to receive an email from Defendant Giordano on November 16, 2022 (the "November 2022 Email") announcing that the POPS had "made the difficult decision to cease

---

[6] *The Philly POPS Restructures with Four Elevated Positions*, Oct. 19, 2021 Archive of www.phillypops.org, available at:        https://web.archive.org/web/20211019220921/https://www.phillypops.org/news/philly-pops-restructures-elevation-four-positions (last accessed May 21, 2024).

[7] *The Philly POPS Raises a Glass with the Eighth Annual POPS Ball*, Sept. 21, 2021 Archive of www.phillypops.org, available at:        https://web.archive.org/web/20210921205723/https://phillypops.org/news/philly-pops-raises-glass-eighth-annual-pops-ball (last accessed May 21, 2024).

[8] Peter Dobrin, *The Uptown Theater and Philly Pops are in Talks to Renovate the North Broad Landmark*, The Philadelphia Inquirer, October 12, 2022.  Available at: https://www.inquirer.com/news/north-broad-theater-uptown-philly-pops-20221012.html (last accessed May 21, 2024).

operations following the conclusion of the 2022-23 season."   A true and correct copy of the

November 16, 2022 Email is attached hereto as Ex. "6".

39.     In the November 2022 Email, Defendant Giordano explained that "[w]hile winding

down the organization was a decision we sincerely hoped to avoid, we are grateful to POKC for

their guidance and counsel in helping to preserve pops programming in Philadelphia."  *See* Ex. 6.

40.     However, Defendant Giordano promised in the November 2022 Email that the

POPS "will continue to carry out slated programming for the 2022–23 season. We will also honor

the terms and conditions of an expired contract agreement with musicians."  *See* Ex. 6.

41.     In a *Philadelphia Inquirer* article published on the same day, Defendant Giordano

blamed the shutdown on a drop in attendance, as well as the POPS' debt burden, explaining that

the group had "amassed a debt of $450,000 to the Kimmel, its major landlord, and about $500,000

to other vendors" by November 2022.[9]

42.     Notably, the *Inquirer* reported that the POPS "decided against a Chapter 11

Reorganization that would have kept the group alive," even though the groups' debt load was not

"crushing."[10]

43.     When asked why the group did not seek bankruptcy protection, Defendant

Giordano reportedly told the *Inquirer* that the POPS' Board of Directors supported the decision to

wind down, explaining, "[w]e didn't think [bankruptcy] was the best alternative.  It's been a

struggle, and the board felt the best way was to take this alliance" with Defendant POKC.[11]

---

[9] Peter Dobrin, *The Philly Pops is Shutting Down, Leaders Say*, The Philadelphia Inquirer, Nov. 16, 2022, available
at: https://www.inquirer.com/news/philly-pops-shutting-down-20221116.html (last accessed May 7, 2024).
[10] Id.
[11] Id.

44.     Nonetheless, Defendant Giordano reassured the *Inquirer* that the POPS' "main concern is to address our audience and artist obligations," and further promised that staff would be kept through the end of the season.[12]

45.     Defendant Tarnopolsky was also interviewed by the *Inquirer*, and acknowledged that his "hope and plan" was for Defendant POKC to "present pops programming in the future."[13]

46.     In reliance on Defendant Giordano's promises and assurances, Stafford continued to fulfill his obligations under the 2022 Employment Agreement by, among other things, leading the Philly POPS' Jazz Orchestra of Philadelphia in multiple performances through December 2022.[14]

47.     Additionally, Stafford joined in efforts to salvage the Pew Grant, including by signing a letter dated November 17, 2022 with Defendant Giordano, Ms. Corbin, and other POPS' leadership to "affirm" and "guarantee" to Pew that "[t]he Philly POPS will meet all conditions of the grant agreement for the recently funded project "The Jazz Orchestra of Philadelphia's Tribute to Shirley Scott."  A true and correct copy of the November 17, 2022 correspondence regarding the Pew Grant is attached hereto as Ex. "7".

### The POPS Ceases Operations and Plaintiff is Constructively Discharged

48.     Over the last few weeks of 2022, the public responded overwhelmingly in support of the POPS.  As Defendant Giordano told the press, "Christmas as usual is very good, except this year it was fantastic" because "[w]e sold every single ticket we had."[15]

---

[12] Id.

[13] Id.

[14] Kathia Woods, *The Curtain Will Soon Fall on the Philly Pops, But Not Yet*, The Philadelphia Tribune, Nov. 17, 2022. Available at: https://www.phillytrib.com/entertainment/music/the-curtain-will-soon-fall-on-the-philly-pops-but-not-yet/article_14359362-38dc-5e07-a879-b28689ae3c9a.html (last accessed May 8, 2024).

[15] Peter Crimmins, *'Hope for a path forward': Philly POPS May Not Be Over After All*, Jan. 4, 2023, WHYY News. Available at: https://whyy.org/articles/philly-pops-continuing/ (last accessed May 21, 2024).

49.     Perhaps revealingly, when a holiday show audience began chanting "Save the POPS", Defendant Giordano confessed that, "[a]t first I thought they were sending me a message. I wanted to hide under the seats. But then I realized it was about the Philly POPS. It's always been about the Philly POPS."[16]

50.     Shortly thereafter, on around January 4, 2023, the POPS announced a $2 million fundraising campaign, although Defendant Giordano cautioned that "[w]e are not out of the woods yet."[17]

51.     Sure enough, the Pew Grant was rescinded, and the POPS failed to produce the balance of the 2022-23 concert season after the Kimmel Defendants evicted the group from Verizon Hall on or around January 20, 2023 over their alleged debt of $1 million, with an announcement stating that "the Philly Pops must suspend all performances on the Kimmel Cultural Campus while the Pops takes time to restructure its business model and raise the funding needed to pay debts and secure a financial future."[18]

52.     Consequently, thousands of POPS supporters and members of the public lost over $1.1 million on tickets for concerts that were never performed, because the POPS had previously received the money and then "[s]pent it on other things."[19]

53.     As a further consequence, Stafford lost out on at least $75,961.48 due under the 2021 and 2022 Employment Agreements and an additional $30,000 for his work in connection with the Pew Grant, as the POPS Defendants breached their duties and obligations to Stafford by,

---

[16] Id.
[17] Id.
[18] Peter Dobrin, *Kimmel Center Evicts Philly Pops Over Past Debt*, The Philadelphia Inquirer, Jan. 20, 2023. Available at https://www.inquirer.com/news/kimmel-kicks-out-philly-pops-20230120.html (last accessed May 21, 2024).
[19] David Murrell, *Who Killed the Philly POPS?*, Philadelphia Magazine, March 23, 2024, available at: https://www.phillymag.com/news/2024/03/23/philly-pops/ (last accessed May 9, 2024); *see also* Ex. 9 at p. 7.

among other things, failing to pay $10,961.48 due under the 2021 Employment Agreement, and failing to pay $65,000 due under the 2022 Employment Agreement.

54.    The failure of the POPS Defendants to perform their contractual duties and obligations to Stafford is without excuse or justification, but was rather the result of a conspiracy by Defendant Giordano and the Kimmel Defendants to control the market for orchestral music in Philadelphia and specifically to "own[] jazz in Philly."[20]

### *The POPS Files the Antitrust Action Against the Kimmel Defendants*

55.    In or around April 2023, the POPS filed an action against the Kimmel Defendants in this Court styled *Encore Series Inc. d/b/a THE PHILLY POPS v. The Philadelphia Orchestra and Kimmel Center, Inc., et al.,* U.S.D.C. E.D. PA No. 2:23-cv-01421-MRP (the "Antitrust Action").

56.    In its operative Amended Complaint, a true and correct copy of which is attached as Ex. "8", the POPS alleges claims under the Clayton Act, 15 U.S.C. § 18, and Section 2 of the Sherman Act, in addition to common law claims for unfair competition and tortious interference, based on allegations that Defendants POA and POKC:

> embarked on a series of predatory business practices directed toward the Philly POPS with the intent to eliminate competition between the Philadelphia Orchestra and the Philly POPS for the performance of live symphony concerts in the Philadelphia Metropolitan Area and to monopolize the performance of live symphony concerts in the Philadelphia Metropolitan Area.

> *See* Ex. 8 at ¶ 52.

57.    Specifically, the POPS alleges that Defendants POA and POKC engaged in the following predatory business practices:

---

[20] Id.  *See* Ex. 9 at p. 8.

a. Beginning in mid-2021 and continuing thereafter the Defendants substantially and unreasonably increased Kimmel Center fees for The Philly POPS to perform live symphony concerts at Verizon Hall.

b. In advance of the 2022-23 concert season and thereafter, POKC under the management and control of the Philadelphia Orchestra, slowed down and ultimately refused entirely the production, distribution and/or sale of tickets by Ticket Philadelphia for previously scheduled concerts by the Philly POPS at Verizon Hall.

c. At the outset of the 2022-23 concert season in September 2022, POPS under the management of the Philadelphia Orchestra, proposed to the Philly POPS that it go out of business at the end of the 2022-23 concert season and transfer its assets and programing to the Philadelphia Orchestra and attempted-through a contracted public relations firm to force false internal and external messaging on the Philly POPS management designed to paint the narrative that the Philly POPS would go out of business with its programming being taken over by the Philadelphia Orchestra.

d. When POKC was informed that the Philly POPS refused to cease operations and turn over its assets and programing to the Philadelphia Orchestra, POKC substantially changed the timeline for payment of fees for the production of concerts at Verizon Hall by the Philly POPS and escalated the fees and cost of ticket production by Ticket Philadelphia.

e. Thereafter, POKC and the Philadelphia Orchestra sought to redirect grant monies earmarked for the Philly POPS to the Philadelphia Orchestra and denied the Philly POPS access to the Ticket Philadelphia database and website.

f. Ticket Philadelphia thereafter locked the Philly POPS out of ticket sales, and the distribution of already sold tickets.

*See* Ex. 8 at ¶¶ 53 – 58.

58.    The POPS further alleges in its operative Amended Complaint in the Antitrust Action that "Matias Tarnopolsky instructed, participated in, conspired with other persons, and/or aided and abetted POKC and the Philadelphia Orchestra in the anti-competitive and tortious activities and conduct alleged in this Complaint."  *See* Ex. 8 at ¶ 11.

***Defendant Giordano's Participation in the Kimmel Defendants' Scheme***

59.     Disclosures after the filing of the Antitrust Action have revealed additional information concerning the nature and extent of the Kimmel Defendants' scheme, as well as the identities and actions of certain participants.

60.     For example, Philadelphia Magazine published an extensive article on March 23, 2024, entitled *Who Killed the Philly POPS?* (the "Philadelphia Magazine Article"). A true and correct copy of the Philadelphia Magazine Article is attached hereto as Ex. "9."

61.     Among other things, the Philadelphia Magazine Article reports that Defendant POA first contemplated a take-over of the POPS' business nearly twenty years ago.

62.     Specifically, the Philadelphia Magazine Article reports that Defendant POA first attempted to merge with the POPS in 2005 to "guarantee [POA] musicians a 52-week salary," and that this plan, which collapsed during the 2008 financial crisis, was "controversial" because "it would have meant putting the freelance POPS musicians out of work." *See* Ex. 9 at p. 4.

63.     The Philadelphia Magazine Article further explains that, as a result of the creation of Defendant POKC in 2021, the Kimmel Defendants currently are in a "unique position" to benefit from a takeover of the POPS' live concert business because the Kimmel Defendants are "vertically integrated, owning both Orchestra and concert venue," thereby enabling them to "potentially capture the $4 million in Philly POPS annual ticket revenue at a relatively low additional cost – especially if already employed Philadelphia Orchestra musicians were the ones doing the performances." *See* Id. at p. 12.

64.     The Philadelphia Magazine Article also reveals additional strong-arm tactics used by the Kimmel Defendants to force the POPS' closure.

65.    For example, the Philadelphia Magazine Article reports that an unidentified employee of the Kimmel Defendants once told Ms. Corbin, "to stop programming jazz shows with the POPS because 'the Kimmel owns jazz in Philly.'"  *See* Id. at p. 8.

66.    Additionally, the Philadelphia Magazine Article reports that Defendant Tarnopolsky first threatened to evict the POPS in September 2022 over an alleged debt of $500,000, or half the amount that allegedly caused the POPS' actual eviction in January 2023. *See* Id. at pp. 11-12.

67.    Even worse, the Philadelphia Magazine Article reports that Defendant Tarnopolsky explicitly tied the September 2022 threat of eviction to a demand for the POPS to throw its business over to the Kimmel Defendants.

68.    Specifically, the Philadelphia Magazine Article reports that Defendant Tarnopolsky wrote an email to Defendant Giordano in September 2022 stating that the POPS must either get "paid up" or come to "agreeable terms regarding a transition."  *See* Id. at p. 13.  According to the article, Defendant Tarnopolsky went on to threaten the POPS' ability to perform shows scheduled for that very month, writing that "[u]nless we can arrive at terms quickly, this means cancelling the September 16, 2022 run of the Moody Blues in the absence of further payments."  *See* Id.

69.    Perhaps most shockingly, the Philadelphia Magazine Article reveals that Defendant Giordano participated in the Kimmel Defendants' efforts to put the POPS out of business.

70.    First, the Philadelphia Magazine Article reports that Defendant Giordano met with Defendant Tarnopolsky in August 2022, with the knowledge of "practically no one at the POPS." *See* Id. at p. 11.  According to an email from Defendant Tarnopolsky to Defendant Giordano that is quoted in the Philadelphia Magazine Article, the purpose of this meeting was to discuss "a new model for the Philly POPS's business relationship with the Kimmel Center."  *See* Id.  According

to Defendant Tarnopolsky's email, both men agreed at the August 2022 meeting to "a plan whereby The Philadelphia Orchestra and Kimmel Center Inc. would take over the programming and production of this season, and future seasons, of Philly POPS programming." *See* Id.

71.     Second, the Philadelphia Magazine Article reports that, at the time he was considering whether to shut down the POPS, Defendant Giordano relied on information from the Kimmel Defendants for his "understanding of the debts" owed by the POPS, rather than on the POPS' interpretation of its own finances. *See* Id. at p. 14.

72.     Indeed, according to the Philadelphia Magazine Article, the POPS disputes the entire alleged $500,000 debt that prompted the August 2022 meeting between Defendant Tarnopolsky and Defendant Giordano, with Ms. Corbin quoted as stating, "I truly don't know where that figure came from" despite her role overseeing the group's finances, and two additional "higher-ups at the POPS" stating their belief that "the POPS was even with POKC in September." *See* Id. at p. 14.

73.     Third, the Philadelphia Magazine Article contradicts Defendants Giordano's contemporaneous claims of Board support for his decision to cease operations, reporting that "some members actually learned of the shutdown from [the *Inquirer*] article or via email," and that "[t]here was never any vote taken to shut down the POPS." *See* Id. at pp. 3, 15.

74.     In fact, the Philadelphia Magazine Article quotes multiple members of the POPS Board of Directors disclaiming the decision to shut down.  For example, Sal DeBunda, a member of the Board for over a decade, reportedly stated, "I would never approve shutting down. Frank did." *See* Id. at p. 15.  The article also quotes board member Meryl Levitz that the Board "expected a proposal" concerning a potential merger "[b]ut we didn't ever see that." *See* Id.  Additionally,

the article quotes Ms. Corbin's explanation that the merger "was never brought to a vote, in my mind, because I'm not certain it ever had the board's support." *See* Id.

75.    In other words, upon information and belief, Defendant Giordano acted in furtherance of the Kimmel Defendants' conspiracy to control of the market for live orchestral music and own jazz in Philadelphia by, among other things, conspiring with Defendant Tarnopolsky to facilitate the Kimmel Defendants' "take over" of the POPS' business, intentionally misrepresenting the financial condition of the POPS to the Board of Directors, donors, employees, and the general public in order to fraudulently induce a shutdown of operations, and intentionally misrepresenting the level of support for this decision within the POPS' organization.

76.    Because of Defendants' actions, Stafford has been deprived of substantial amounts due to him under the 2021 Employment Agreement and 2022 Employment Agreement and in connection with the Pew Grant, and been prevented from pursuing his livelihood.  By their actions, Defendants have committed RICO and antitrust violations, and engaged in breach of contract, tortious interference, and unfair competition.

## COUNT I
### VIOLATION OF 18 U.S.C. § 1962(c)
#### (Plaintiff v. Kimmel Defendants and Defendant Giordano)

77.    Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

78.    RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]."  18 U.S.C. § 1964(c).  Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate,

directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  Defendants violated this provision of 18 U.S.C. § 1962.

79.     An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity."  18 U.S.C. § 1961(4).  Defendant Giordano and Defendant Tarnopolsky partnered together to control the market for orchestral music in Philadelphia and enable the Kimmel Defendants to "own jazz in Philly."  This partnership is evidenced by, among other things, Defendant Giordano's public descriptions of an "alliance" with the Kimmel Defendants, as well as Defendant Tarnopolsky's private email concerning the "plan" to "take over" the POPS' programming.  Defendants' illicit partnership qualifies as an "enterprise."

80.     Through the numerous acts of mail and wire fraud and interference with commerce detailed above, Defendant Giordano and Defendant Tarnopolsky conducted or participated in the conduct of the affairs of Defendants POPS, POA, POKC, and Ticket Philadelphia through a pattern of racketeering activity.

81.     In connection with the numerous acts of mail and wire fraud and interference with commerce detailed above, Defendants utilized the mails, telephones, computers and other instrumentalities of interstate commerce, and therefore Defendants' activities affect interstate commerce.

82.     The racketeering activities of Defendants directly and proximately injured the business and property of Plaintiff. As an immediate and direct result of these racketeering activities, Plaintiff suffered the loss of over $100,000 to which he was entitled under the 2021 and 2022 Employment Agreements and in connection with the Pew Grant, as well as the loss of hundreds of thousands of dollars in future opportunities arising out of Defendants' constructive termination of Plaintiff's position as the Philly POPS' Artistic Director for Jazz.

**WHEREFORE**, Plaintiff Terell Stafford respectfully demands judgment against defendants Frank Giordano, Matias Tarnopolsky, the Philadelphia Orchestra Association, The Philadelphia Orchestra and Kimmel Center, Inc., and Ticket Philadelphia, and an award for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law, together with other such relief as the Court may deem equitable, just and proper.

## COUNT II
### VIOLATION OF 18 U.S.C. § 1962(d)
### (Plaintiff v. Kimmel Defendants and Defendant Giordano)

83.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

84.     RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

85.     An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). Defendant Giordano and Defendant Tarnopolsky partnered together to control the market for orchestral music in Philadelphia and enable the Kimmel Defendants to "own jazz in Philly."  This partnership is evidenced by, among other things, Defendant Giordano's public descriptions of an "alliance" with the Kimmel Defendants, as well as Defendant Tarnopolsky's private email concerning the "plan" for the Kimmel Defendants to "take over" the POPS' programming.  Defendants' illicit partnership qualifies as an "enterprise."

86.     In connection with the numerous acts of mail and wire fraud and interference with commerce detailed above, Defendants utilized the mails, telephones, computers and other instrumentalities of interstate commerce, and therefore, Defendants' activities affect interstate commerce.

87.     Defendants Giordano and Tarnopolsky are associated with each other and with Defendants POA, POKC, and Ticket Philadelphia, which also participated in the illegal scheme. Defendant Giordano and the Kimmel Defendants therefore agreed and conspired to engage in the pattern of mail and wire fraud and interference with commerce detailed above—a pattern of mail and wire fraud that violated 18 U.S.C. § 1962(c).  This conspiracy violated 18 U.S.C. § 1962(d).

88.     Through this agreed-upon pattern of racketeering activity, Plaintiff was directly and proximately injured in his business and property. As an immediate and direct result of these racketeering activities, Plaintiff suffered the loss of over $100,000 to which he was entitled under the 2021 and 2022 Employment Agreements and in connection with the Pew Grant, as well as the loss of hundreds of thousands of dollars in future opportunities arising out of Defendants' constructive termination of Plaintiff's position as the Philly POPS' Artistic Director for Jazz.

**WHEREFORE**, Plaintiff Terell Stafford respectfully demands judgment against defendants Frank Giordano, Matias Tarnopolsky, the Philadelphia Orchestra Association, The Philadelphia Orchestra and Kimmel Center, Inc., and Ticket Philadelphia, and an award for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law, together with other such relief as the Court may deem equitable, just and proper.

## <u>COUNT III</u>
## VIOLATION OF 15 U.S.C. §§ 1 AND 2
### (Plaintiff v. Kimmel Defendants)

89.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

90.     Without admitting any of the averments contained therein as against the POPS Defendants, Plaintiff incorporates herein by reference the averments set forth in the POPS' Amended Complaint against the Kimmel Defendants pertaining to the Kimmel Defendants' violation of Section 2 of the Sherman Act.  *See* Ex. 8 at Count Two, ¶¶ 68-80.

91.     Additionally, the Kimmel Defendants entered into and engaged in a contract, combination, or conspiracy with themselves and with unnamed co-conspirators in unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

92.     The Kimmel Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially take over the market for live orchestral jazz music in Philadelphia, thereby creating anticompetitive effects.

93.     The conspiratorial acts and combinations have caused unreasonable restraints in the Philadelphia orchestral music market.

94.     As a result of Defendants' unlawful conduct, Plaintiff has lost out on substantial sums of money to which he was contractually entitled, as well as on lucrative future opportunities.

95.     In formulating and carrying out this agreement, understanding, and conspiracy, Defendants and their co-conspirators did those things that they combined and conspired to do, including, but not limited to, the acts, practices, and course of conduct set forth herein.

96.     Defendants' conspiracy had the following effects, among others:

     a.  The orchestral music industry has been restrained and/or suppressed in Philadelphia;

b.  Members of the public have lost over $1.1 million on tickets for POPS concerts that were never performed;

c.  Plaintiff and many other musicians and professionals have been deprived of the benefits of free and open competition.

97.  Plaintiff has been injured in his business and property as a result of the above.

**WHEREFORE**, Plaintiff Terell Stafford respectfully demands judgment against defendants Matias Tarnopolsky, the Philadelphia Orchestra Association, The Philadelphia Orchestra and Kimmel Center, Inc., and Ticket Philadelphia, and an award for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

<u>**COUNT IV**</u>
**BREACH OF CONTRACT**
**(Plaintiff v. POPS Defendants)**

98.  Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

99.  Pursuant to the 2021 and 2022 Employment Agreements, Plaintiff agreed to render valuable services to the POPS Defendants as the Philly POPS Artistic Director for Jazz as set forth above in exchange for payment of at least $110,000 per year.

100.  Plaintiff performed all the conditions precedent to the 2021 and 2022 Employment Agreements.

101.  The POPS Defendants breached their agreements with Plaintiff when they failed to pay him agreed upon salary, fees and other wages.

102.  Specifically, the POPS Defendants breached the 2021 Employment Agreement by failing to pay Plaintiff $10,961.48 due under the Agreement.

103.     Additionally, the POPS Defendants breached the 2022 Employment Agreement by failing to pay Plaintiff $65,000 due under the Agreement, and by depriving Plaintiff of an additional $30,000 in connection with his augmented scope of work for the Pew Grant.

104.     The POPS Defendants' refusal to pay Plaintiff the amounts due under the 2021 and 2022 Employment Agreements constitutes a breach of the Agreements.

105.     Plaintiff has suffered economic losses because of the POPS Defendants' breaches of the 2021 and 2022 Employment Agreements.

**WHEREFORE**, Plaintiff Terell Stafford respectfully demands judgment against defendants Frank Giordano and Encore Series Inc. d/b/a The Philly POPS, and an award of damages in an amount to be determined at trial, plus interest, costs, expenses, and such other relief as the Court may deem equitable and just.

<u>**COUNT V**</u>
**VIOLATION OF PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW**
**(Plaintiff v. POPS Defendants)**

106.     Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

107.     The fees that Plaintiff is contractually entitled to under the terms of the 2021 and 2022 Employment Agreements constitute "wages" under the Pennsylvania Wage Payment and Collection Law ("WPCL").  *See* 43 P.S. § 260.2a.

108.     At all relevant times, the POPS Defendants were "employers" within the meaning of the WPCL.  *See* 43 P.S. § 260.2a.

109.     At all relevant times, Defendant Giordano was a "person" and "employer" within the meaning of the WPCL, and an active decision-maker with respect to Plaintiff's unpaid wages. *See* 43 P.S. § 260.2a.

110.    The POPS Defendants willfully failed to pay Plaintiff wages earned as defined by the WPCL during the course of his employment within the time limits prescribed by the WPCL.

111.    Following the constructive termination of Plaintiff's employment, the POPS Defendants willfully failed to pay Plaintiff his wages earned within the time limits prescribed by the WPCL.

112.    The POPS Defendants have failed to pay wages due for a period in excess of thirty (30) days beyond regularly scheduled paydays.

113.    As a direct and proximate result of the POPS Defendants' violation of the Pennsylvania Wage Payment and Collection Law, Plaintiff has sustained loss of earnings, liquidated damages, and interest due thereon and has incurred attorneys' fees and costs.

**WHEREFORE**, Plaintiff Terell Stafford respectfully demands judgment against defendants Frank Giordano and Encore Series Inc. d/b/a The Philly POPS, and an award of damages in an amount to be determined at trial, plus liquidated damages, interest, attorneys' fees and costs of suit and such other relief as the Court may deem just and proper.

<u>COUNT VI</u>
**TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS**
**(Plaintiff v. Kimmel Defendants)**

114.    Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

115.    As discussed above, Plaintiff had an existing contractual relationship to serve as the Philly POPS' Artistic Director for Jazz.

116.    As also discussed above, upon information and belief, the Kimmel Defendants engaged in unlawful and vexatious conduct that was intended to interfere with Plaintiff's existing

contractual relationship with the POPS.  The Kimmel Defendants' conduct was neither justified nor privileged.

117.    The Kimmel Defendants' misconduct in fact interfered with Plaintiff's existing contractual relationship, resulting in, at a minimum, the loss of over $100,000 and the termination of Plaintiffs' position as the Philly POPS' Artistic Director for Jazz.  These damages exclude court costs, interest, and attorneys' fees.

118.    The Kimmel Defendants' misconduct was outrageous, and was undertaken intentionally, willfully, wantonly and/or recklessly.

**WHEREFORE**, Plaintiff Terell Stafford respectfully demands judgment against defendants Matias Tarnopolsky, the Philadelphia Orchestra Association, The Philadelphia Orchestra and Kimmel Center, Inc., and Ticket Philadelphia, and an award of damages, including direct, consequential, and punitive damages, in an amount to be determined at trial, plus interest and costs of suit, and such other relief as the Court deems just and proper.

## <u>COUNT VII</u>
## TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS
### (Plaintiff v. Kimmel Defendants)

119.    Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

120.    As discussed above, Plaintiff had prospective contractual relationships with the POPS for future work.

121.    As also discussed above, upon information and belief, the Kimmel Defendants engaged in unlawful and vexatious conduct that was intended to interfere with Plaintiff's prospective contractual relationships with the POPS.  The Kimmel Defendants' conduct was neither justified nor privileged.

122.    The Kimmel Defendants' misconduct in fact interfered with Plaintiff's prospective contractual relationships, resulting in, at a minimum, the loss of over one hundred thousand dollars per year and the loss of Plaintiff's position as the Philly POPS' Artistic Director for Jazz for the future.  These damages exclude court costs, interest, and attorneys' fees.

123.    The Kimmel Defendants' misconduct was outrageous, and was undertaken intentionally, willfully, wantonly and/or recklessly.

**WHEREFORE**, Plaintiff Terell Stafford respectfully demands judgment against defendants Matias Tarnopolsky, the Philadelphia Orchestra Association, The Philadelphia Orchestra and Kimmel Center, Inc., and Ticket Philadelphia, and an award of damages, including direct, consequential, and punitive damages, in an amount to be determined at trial, plus interest and costs of suit, and such other relief as the Court deems just and proper.

**COUNT VIII**
**UNFAIR COMPETITION**
**(Plaintiff v. Kimmel Defendants)**

124.    Plaintiff incorporates and restates by reference all of the preceding allegations as though fully set forth herein.

125.    Without admitting any of the averments contained therein as against the POPS Defendants, Plaintiff incorporates herein by reference the averments set forth in the POPS' Amended Complaint in the Antitrust Action against the Kimmel Defendants pertaining to the Kimmel Defendants' unfair competition in violation of Pennsylvania law.  *See* Ex. 8 at Count Four, ¶¶ 89-96.

126.    The Kimmel Defendants have unfairly competed with Plaintiff by artificially taking over the market for live orchestral jazz music in Philadelphia.

127.    The Kimmel Defendants' method of competition is not based upon superior business methods or technology but rather is based solely on the illegal conduct referred to above.

128.    The illegal conduct of the Kimmel Defendants in unfairly competing with Plaintiff has caused substantial economic harm to Plaintiff.

**WHEREFORE**, Plaintiff Terell Stafford demands as judgment against Defendants Matias Tarnopolsky, the Philadelphia Orchestra Association, The Philadelphia Orchestra and Kimmel Center, Inc., and Ticket Philadelphia for compensatory damages in such amount as the jury finds necessary to adequately compensate Plaintiff for his losses and damages aforesaid and for punitive damages in such amount as the jury finds will punish Defendants and act as a deterrent to Defendants and others who commit similar acts in the future.

## JURY TRIAL DEMANDED

Plaintiff hereby demands trial by jury as to all issues so triable.

**Respectfully submitted,**

_____
Jonathan Zakheim
David L. Woloshin
**ASTOR WEISS KAPLAN & MANDEL, LLP**
200 South Broad Street
Suite 600
Philadelphia, PA 19102
Phone: (215) 790-0100 | Fax: (215) 790-0509
Email: jzakheim@astorweiss.com
        dwoloshin@astorweiss.com